## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MICHAEL ERBY, on behalf of himself and all others similarly situated,** | **CIVIL ACTION** |
| Plaintiffs, | |
| *v.* | **NO. 18-4944-KSM** |
| **ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY, et al.** | |
| Defendants. | |

## <u>MEMORANDUM</u>

**MARSTON, J.**                                                              **October 24, 2022**

This is a putative class action lawsuit in which Class Representative Michael Erby alleges that Defendants, Allstate Fire and Casualty Insurance Company ("Allstate Fire"), Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property and Casualty Insurance Company (collectively, "Allstate" or "Defendants"), violated Pennsylvania law by failing to reimburse the applicable sales tax on "total loss" leased vehicles, i.e., leased vehicles that were damaged beyond repair. The parties entered into a settlement in April 2022, and the Honorable Petrese B. Tucker preliminarily approved the settlement shortly thereafter.[1] (*See* Doc. No. 49 (Apr. 29, 2022 Order); Doc. No. 51 (May 17, 2022 modified order).) Presently before the Court are the parties' Joint Motion for Final Approval of Class Action Settlement (Doc. No. 56) and Plaintiff's Motion for Award of Attorneys' Fees, Expenses, and Service Awards (Doc. No. 57). For the reasons below, the Joint Motion for Final Approval is granted, and Plaintiff's Motion for Award of Attorneys' Fees, Expenses, and Service Awards is granted in part and denied in part.

---

[1] On July 22, 2022, this case was reassigned to the Honorable Karen Spencer Marston. (Doc. No. 53.)

I.       **BACKGROUND**

     *A.*       ***Background Litigation***

On August 25, 2016, Erby was involved in a motor vehicle accident during which his leased Honda Accord was struck by another motorist who was driving a Cadillac Escalade insured by Allstate.  (Doc. No. 46 at ¶¶ 9–10.)  Erby's vehicle "was destroyed at a cost too high for repair."  (*Id.* at ¶ 11.)  Following the accident, Allstate Fire provided Erby a Market Valuation Report, which stated that the statewide value of his leased vehicle was $18,195.  (*Id.* at ¶ 12; *see also id.*, Ex. A at 15 (CCC One Market Valuation Report).)  The report also stated that Erby's vehicle had a base value of $18,094 and a CCC Intelligent Solutions Inc. valuation of $18,144.50, which represented the average of the statewide and base vehicle values.  (*Id.*, Ex. A at 15.)  Allstate Fire also provided an adjustment to settle of $900 and a DMV fee of $60, which, when added together with the $18,144.50, amounted to a total of $19,104.50.  (*Id.*)  Erby and Allstate Fire reduced their agreement to writing, pursuant to which Erby authorized the release of the title of his leased vehicle in exchange for a settlement check from Allstate.  (*Id.*, Ex. B at 30 (Title Release Authorization).)  However, Erby was never reimbursed "for sales taxes for the total loss of his vehicle."  (*Id.* at ¶ 14.)

Erby claims Allstate does not reimburse sales tax on the total loss of leased vehicles, in violation of Pennsylvania law.  (*See, e.g.*, *id.* at ¶¶ 15–17.)  In October 2018, Erby filed this lawsuit on behalf of himself and all other similarly situated individuals solely against the Allstate Corporation.[2]  (*See* Doc. No. 1 at 14–23.)  The Complaint alleged claims for breach of contract, unjust enrichment, violation of Pennsylvania's Unfair Trade Practices and Consumer Protection

---

[2] Specifically, Erby filed suit on behalf of individuals "whose vehicles were reimbursed by Allstate due to total loss who were not paid the applicable sales tax as required for reimbursement pursuant to 31 Pa. Code § 62.3(e)(4)."  (Doc. No. 1 at ¶ 14.)

Law ("UTPCPL"), and breach of Pennsylvania's bad faith statute.  (*Id.* at 19–22.)  The Allstate Corporation removed the case to this Court on November 14, 2018.  (*See generally id.*)

On January 18, 2019, Erby filed a First Amended Complaint, naming Allstate Fire as the Defendant.  (Doc. No. 7.)  Subsequently, Allstate Fire filed a motion to dismiss, which Judge Tucker granted in part and denied in part.  (Doc. No. 21.)  The Court dismissed the breach of contract and bad faith counts but denied the motion as to the unjust enrichment and UTPCPL claims.  (*Id.*)  Erby filed a motion for reconsideration, which the Court denied.  (Doc. No. 30.)

Following a period of discovery and settlement negotiations, the parties filed a Stipulation in March 2022, seeking to allow Erby to file a Second Amended Complaint to add the other Allstate Defendants, which the Court granted.  (Doc. Nos. 44–45.)  Plaintiff filed his Second Amended Complaint on April 4, 2022.  (Doc. No. 46.)  The next day, April 5, the parties entered into a Class Action Settlement Agreement (the "Settlement Agreement").[3]  (Doc. No. 47-1.)  On April 29, the Court preliminarily approved the settlement and provisionally certified the class, and on May 17, the Court amended the Order, setting the date for the Final Approval Hearing to be held on September 15, 2022.  (Doc. No. 49.)

**B.     *Settlement Agreement***

The Settlement Agreement contains the following provisions.

**1.     Settlement Class**

The Settlement Class consists of individuals who, from January 1, 2012 through April 29, 2022, "submitted a private-passenger auto physical damage claim for a leased vehicle under an Allstate Pennsylvania policy . . . whose claim was adjusted by Allstate as a total-loss claim, and

---

[3] Unless otherwise noted, capitalized terms not defined herein are given the meaning ascribed in the Settlement Agreement.

whose claim resulted in a Total Loss Claim Payment by Allstate, and who were not paid Full Sales Tax."[4]  (*See* Doc. No. 47-1 ¶¶ OO (defining Settlement Class), J (defining Class Period).)

### 2.      Payments to Class Members

This is a "claims-made" settlement.  (*Id.* at ¶ 31.)  Pursuant to the Settlement Agreement, Allstate will make a payment to each member of the Settlement Class who submits a timely and valid Claim Form or Electronic Claim Form and does not request exclusion from the Class.  (*Id.*) The Claim Payment will be the amount of unpaid Sales Tax, which will be calculated by "(1) determining the Full Sales Tax[5] for the vehicle that was a total loss; and (2) subtracting any amount of sales tax that was included in any prior payment made by Allstate on the claim."  (*Id.* at ¶ 32; *see also id.* ("For example, if the Full Sales Tax was $600.00 and a prior payment included $100.00 for sales tax, the Eligible Class Member will receive a payment of $500.00.").)

### 3.      Attorneys' Fees, Costs, Expenses, and Service Award

Separate and apart from the amount to be paid to the Class Members, Allstate has agreed that it will "not oppose or object to a motion" requesting an award of attorneys' fees, costs, and expenses to be paid to Class Counsel" or a Service Award to Erby, so long as the amounts

---

[4] The Settlement Agreement also excludes certain groups of people from the Settlement Class, including (a) Allstate, its present or former officers and/or directors, the Settlement Administrator, the Mediator, the Neutral Evaluator, Class Counsel, and the court; (b) "individuals with claims for which Allstate received a valid and executed release"; (c) "individuals who are not on the Notice List and who did not submit a valid Claim Form or Electronic Claim Form for payment under this Settlement"; (d) individuals who opted out from the class; (e) individuals who received Full Sales Tax on their claims; and (f) "individuals whose claims for property damage for which the individual process of appraisal or arbitration or a lawsuit has been completed or initiated."  (Doc. No. 47-1 at ¶ OO.)

[5] The Settlement Agreement defines Full Sales Tax as "the amount of sales tax that would be due based on the adjusted vehicle value of the insured vehicle as determined by Allstate at the time of the total loss in the Pennsylvania county where the Settlement Class Member resided at the time of the total loss." (*Id.* at ¶ X.)  "For Settlement Class Members, this includes a 6% Pennsylvania state sales tax, and where applicable, a local sales tax."  (*Id.*; *see also id.* ("For example, 1% is added to the state sales tax in Allegheny County and 2% sales tax is added to the state sales tax in Philadelphia County.").)

requested do not exceed the following:  $730,000 for attorneys' fees, $25,000 for costs, and $6,500 for the service award.  (*Id.* ¶¶ 43–44; *see also id.* at ¶ 44 ("Allstate agrees to pay the attorneys' fees and costs award and service award or any lesser."); *id.* at ¶ 43 ("The amount owed and/or paid to Settlement Class Members will not be adjusted or reduced in any way as a result of any payments made for attorneys' fees, costs, service awards, or the costs of administration and notice.").)

Allstate has also agreed to pay the costs incurred by the Settlement Administrator, including "administrative costs, notice costs, claims handling cost, postage, website maintenance, [and] costs to email."  (*Id.* at ¶ 65; *see also id.* at ¶¶ 9, 28 ("Allstate shall be solely responsible for the payment of the Settlement Administrator's fees and costs relating to the effectuating of Class Notice . . . Settlement administration fees and costs are separate from, and are not included as, part of the lawsuit expenses and costs that Allstate separately agrees to pay as part of those Attorneys' Fees and Costs approved by the Court.").)

### 4.    Change of Conditions

Allstate also agreed to change its behavior with respect to future claims following preliminarily approval of the Settlement.  Under the Settlement Agreement, Allstate agrees to "include payments for Full Sales Tax in Total Loss Claim Payment(s) relating to vehicles under Pennsylvania private and passenger auto insurance policies, unless and until" one of three events occurs.  (*Id.* at ¶ 66.)  Those events include (a) "Allstate implement[ing] a change in their private passenger auto insurance policies to exclude from actual cash value or otherwise Sales Tax"; (b) the Pennsylvania Supreme Court issuing a decision in which it holds "that such fees are covered by policies utilizing language substantially similar to Allstate's Policy language"; or (c) the amendment of Pennsylvania statutes or regulations "to clarify that sales tax is not owed to

total loss insureds." (*Id.*) Regardless of whether one of these three events occurs, however, Allstate will pay the amounts due under the Settlement Agreement; the sole exception is the payment of future claims. (*Id.*)

### 5.    Release

After the Settlement is finally approved, the Settlement Class will release Allstate from any claims and causes of action "arising from or relating in any way to Allstate's failure to pay sufficient sales tax to Plaintiff and all Settlement Class Members with respect to any Covered Total Loss Claim during the Class Period under an Automobile Insurance Policy." (*Id.* at ¶¶ KK (defining Released Claim), 61–62.) The Settlement "will not operate as a bar to any Class Member from pursuing" unrelated claims. (*Id.* at ¶ 62.)

### C.    *Preliminary Approval and the Notice Period*

On April 29, 2022, the Court preliminarily approved the Settlement,[6] and Epiq Class Action and Claims Solutions, Inc. ("Epiq") was appointed Settlement/Claims Administrator. (Doc. No. 49.)

*Mail Notice:* On July 28, 2022, Epiq mailed 26,746 Mail Notice and Claim Forms to potential Settlement Class Members included in the Claims and Policy Data who had a valid mailing address.[7] (*Id.* at ¶¶ 11, 14.) Prior to dissemination, Epiq cross-checked the mailing addresses that were provided in the Claims and Policy Data against the National Change of Address ("NCOA") database maintained by the United States Postal Service ("USPS"). (*Id.* at ¶

---

[6] At the parties' request, on May 17, 2022, the Court modified its Preliminary Approval Order to extend the Notice Period, time for objections, and date of the Final Approval Hearing. (Doc. Nos. 50–51.)

[7] "In addition, a Claim Form was available to be mailed to all persons who submitted a request for one." (*Id.* at ¶ 14.) As of August 30, 2022, 27 requests for Claim Forms were received and fulfilled. (*Id.*)

12.)  Epiq also processed the addresses via the Coding Accuracy Support System ("CASS") to ensure the quality of the zip code and verified the accuracy of the addresses through Delivery Point Validation ("DPV").  (*Id.*)  A total of 2,395 records in the Claims and Policy Data sent through the USPS, NCOA, CASS, and DPV systems were updated with new addresses.  (*Id.*)

As of August 30, 2022, 177 Mail Notices were returned by the USPS with forwarding information, and Epiq promptly re-mailed the notices to the forwarding addresses.  (*Id.* at ¶ 15.)  In addition, a total of 1,328 Mail Notices were returned without forwarding information.  (*Id.* at ¶ 16.)  Epiq had skip-trace searches performed by a third-party lookup service; as a result, 869 addresses were updated and Epiq re-mailed 869 Mail Notices.  (*Id.*)

*Email Notice*.  On August 1, 2022, Epiq electronically disseminated the Email Notice to the 24,539 email addresses included in the Claims and Policy Data that were initially deemed viable.  (Doc. No. 56-3 at ¶ 7; *see also id.* at ¶ 5 (stating that Epiq electronically disseminated the Email Notice to potential "Settlement Class Member[s] for whom an email address was provided in the Claims and Policy Data").)  Out of the initial transmittal, only 2,568 Email Notices could not be delivered.  (*Id.* at ¶ 8.)  Accordingly, "89.5% of those Settlement Class Members with an email address identified in the Claims and Policy Data" were successfully transmitted the Email Notice.  (*Id.*)

In addition, on August 19, Epiq sent a second transmittal notice notifying potential Class Members that the case had been reassigned to Judge Marston and the updating the location of the Final Approval Hearing, pursuant to this Court's August 4 Order.  (*Id.* at ¶ 9.)  This email was sent to all available email addresses; 1,087 emails could not be delivered.  (*Id.*)  Epiq also scheduled a third and final reminder email to be sent on September 6, which was sent to potential Class Members who had deliverable email addresses and had not already submitted a Claim

Form.  (*Id.* at ¶ 10.)

In total, as of August 30, 2022, "Epiq mailed and/or emailed notice to 26,746 unique Settlement Class Members, with notice to 445 Settlement Class Members currently known to be undeliverable by both mail and email, yielding an overall 98.3% deliverable rate to the Settlement Class as a whole when considering all forms of notice attempted."  (*Id.* at ¶ 17.)

*Settlement Website and Toll-Free Information Line*.  Epiq also created a website, ErbyTotalLossInsuranceSettlement.com, that potential Class Members could visit to obtain information about the Settlement.  (*Id.* at ¶ 18.)  As of August 30, 2022, the website had been visited by 9,023 unique visitors and 26,573 website pages were viewed.  (*Id.* at ¶ 19.)  Epiq also established a toll-free interactive Voice Response Unit, 1-855-662-0076, to provide information about the Settlement and receive inquiries from potential Class Members.  (*Id.* at ¶ 20.)  As of August 30, 2022, the toll-free line had received 333 calls.  (*Id.* at ¶ 21.)

### D.  Claim Form Submissions, Opt-Outs, and Objections

In all, by August 30, 2022, Epiq received 7,712 Claim Forms.[8]  (*Id.* at ¶ 24.)  Only four Class Members have requested to be excluded from the Class, and no one has objected to the Settlement.  (*Id.* at ¶¶ 22–23.)

And per the status update the Court requested at the Final Approving Hearing, as of October 6, 2022, Epiq received 9,628 Claim Forms.[9]  (Oct. 7, 2022 Ltr.)  At the Court's request,

---

[8] This number is preliminary, as Epiq is still receiving, reviewing, and processing timely claims. Potential Settlement Class Members who wish to make a claim must submit a completed Claim Form and submit it no later than October 26, 2022.  (*Id.* at ¶ 24 & n.3; *see also* Oct. 7, 2022 Ltr.)

[9] Confusingly, the parties' October 7, 2022 letter provides two amounts of the number of claims forms received:  9,638 and 9,628.  (*Compare* Oct. 7, 2022 Ltr. at ¶ 2 *with id.* at ¶ 4.)  The Court assumes that one of the numbers is a typographical error, and for the purposes of this Motion, we will assume that 9,628 claims forms have been received.

the parties conducted a random sampling of those claim forms.  (*Id.*)  They randomly selected 55 online claim forms and 53 mailed claim forms and found that 26 of those 108 claims were entitled to an additional sales tax reimbursement.  (*Id.*; *see also id.* ("This represents 24% of the claim forms reviewed as not receiving proper reimbursement.").)  The average amount owed on each claim was $562.33.00.[10]  (*Id.*)  Taken together, an estimated $1,299,387.18 will be paid out on the existing 9,628 claims received so far.  (*Id.*; *see also id.* ("This represents 24% of these claim forms with an average pay out of $56[2].33.").)

*     *     *

On September 1, 2022, the parties filed a Joint Motion for Final Approval of Class Action Settlement.  (Doc. No. 56.)  And that same day, Class Counsel filed an Unopposed Motion for Award of Attorneys' Fees, Expenses, and Service Awards.  (Doc. No. 57.)  The Court held the Final Approval Hearing on September 15, 2022.

## II.     THE SETTLEMENT

Before considering the merits of the Settlement, the Court must determine whether to certify the Settlement Class.

### A.     *The Settlement Class Is Certified*

"For a class action to have preclusive effect and bind absent class members, a class must first be certified."  *In re Nat'l Football League Players' Concussion Injury Litig.*, 307 F.R.D. 351, 370 (E.D. Pa. 2015).  A court may certify class actions for the sole purpose of settlement. *In re CertainTeed Corp. Roofing Shingle Prods. Liab. Litig.*, 269 F.R.D. 468, 476 (E.D. Pa.

---

[10] The parties' October 7, 2022 letter also confusingly provides two different numbers representing the "average amount owed on each claim":  $562.33 and $563.33.  (*Compare id.* at ¶ 1 *with id.* at ¶ 4.)  Again, the Court assumes that one of the averages contains a typographical error, and for the purposes of this Motion, the Court will use the average amount owed on each claim as being $562.33.

2010) (citing *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 786 (3d Cir. 1995)).  In these situations, the court "approves preliminary certification of the class,"[11] but reserves "[f]inal certification" until it "rules on whether the final settlement agreement is to be approved."  *Id.*  When a court certifies a class for settlement, "it must first find that the class satisfies all the requirements of Rule 23."  *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 300 (3d Cir. 2005).  The "central inquiry . . . is the adequacy of representation."  *Id.*

Rules 23(a) and 23(b) of the Federal Rules of Civil Procedure set forth the requirements for class certification.  Under Rule 23(a), a class action is allowable only if:

> (1)  the class is so numerous that joinder of all members is impracticable;
>
> (2)  there are questions of law or fact common to the class;
>
> (3)  the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4)  the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *see also Reyes v. Netdeposit, LLC*, 802 F.3d 469, 482 (3d Cir. 2015) ("All potential classes must initially satisfy four prerequisites to be certified: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.").

If the Rule 23(a) conditions are met, then a case may proceed as a class action if one of the conditions of Rule 23(b) is also satisfied.  Here, Class Counsel seek certification for a class under Rule 23(b)(3), which requires that "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently

---

[11] When the Judge Tucker preliminarily approved the Settlement, she also preliminarily certified the Class.  (*See* Docs. No. 49, 51.)

adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *see also Reyes*, 802 F.3d at 482 (explaining that the plaintiff must demonstrate "predominance and superiority" for certification under Rule 23(b)(3)).

Here, the Settlement Class consists of "[a]ll persons who submitted a private-passenger auto physical damage claim for a leased vehicle under an Allstate Pennsylvania policy during the Class Period whose claim was adjusted by Allstate as a total-loss claim, and whose claim resulted in a Total Loss Claim Payment by Allstate, and who were not paid Full Sales Tax" with a Class Period of January 1, 2012 to April 29, 2022. (Doc. No. 47-1 ¶¶ J, OO.) The Court considers whether this class satisfies the requirements set forth in Rules 23(a) and 23(b) in turn.

### 1.    Rule 23(a) Requirements

As noted above, Rule 23(a) sets forth four preliminary requirements for a class to be certified: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *See Reyes*, 802 F.3d at 482. The Settlement Class satisfies all four requirements.

*Numerosity.* While "[t]here is no magic number of class members needed for a suit to proceed as a class action," the Third Circuit has held that "numerosity is generally satisfied if there are more than 40 class members." *In re Nat'l Football League Players Concussion Inj. Litig.*, 821 F.3d 410, 426 (3d Cir. 2016). Here, the class includes thousands of individuals, so joinder is impracticable. (Doc. No. 56-1 at 15; Oct. 7, 2022 Ltr. (stating that Epiq has received 9,628 Claim Forms so far).) We agree that the Class is sufficiently large to satisfy Rule 23(a)'s numerosity requirement.

*Commonality.* As the Third Circuit has explained, "[a] putative class satisfies Rule 23(a)'s commonality requirement if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *In re Nat'l Football League Players*, 821 F.3d at

426–27 (quoting *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 382 (3d Cir. 2013)).  It is "easy enough" to meet the requirement, provided all members of the class have claims that are capable of class-wide resolution.  *Id.*  Commonality is met in this case because each member of the proposed class had a "total loss" claim, as adjusted by Allstate, but was not paid the applicable sales tax by Allstate.  In other words, this case involves Allstate's "uniform conduct with respect to all class members."  (Doc. No. 56-1 at 15.)  And the class members all suffered the same type of harm—they were not paid the full sales tax by Allstate.  Thus, this case presents a sufficient degree of commonality, even if the amount of damages to which each class member is entitled varies.

*Typicality.*  There is a "'low threshold' for typicality"; provided "the interests of the class and the class representative are aligned," courts will find typicality even when class members' claims are only legally similar, and not factually similar.  *In re Nat'l Football League Players*, 821 F.3d at 427–28 (quoting *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 182–83 (3d Cir. 2001)).  Erby's claim is both legally and factually similar to those of other members of the putative class.  Like Erby, all of the Class Members were in an automobile accident involving a "total loss" of use of their leased vehicles and were allegedly not reimbursed by Allstate for sales tax.  These common facts led to the proposed class's common legal claims for UTPCPL and unjust enrichment.  Although the Class Members may be owed differing amounts of sales tax, dependent on, for example, whether any sales tax has been made to them already and if there is a local sales tax where they reside, there is no indication that Erby is atypical in this respect.  (Doc. No. 47-1 at ¶¶ X, 32.)  Accordingly, the proposed class meets Rule 23(a)'s typicality requirement.

*Adequacy of Representation.*  Courts considering adequacy of representation examine

both "the qualifications of class counsel and the class representatives." *In re Nat'l Football League Players*, 821 F.3d at 428. Under this prong of the analysis, courts seek "to root out conflicts of interest within the class" and to "uncover conflicts of interest between the named parties and the class they seek to represent." *Id.* at 428, 430 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)). "A class representative must represent a class capably and diligently," but this is a low bar: "'a minimal degree of knowledge' about the litigation is adequate." *Id.* at 430 (quoting *New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 313 (3d Cir. 2007)). "[T]he linchpin of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class." *In re Cmty. Bank of N. Va.*, 795 F.3d at 393 (quoting *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 183 (3d Cir. 2012)).

First, a class representative must demonstrate adequate standing. "A litigant must be a member of the class which he or she seeks to represent at the time the class action is certified by the district court." *Sosna v. Iowa*, 419 U.S. 393, 403 (1975) (string citation omitted). Here, Erby alleges that Allstate failed to reimburse him for sales taxes after his leased vehicle was deemed a total loss. Therefore, he is a Class Member and has standing to pursue claims on behalf of the class.

Second, there is no conflict of interest between Erby and the other Class Members. Erby's alleged harm—underpayment/no reimbursement for sales tax on his leased vehicle—is factually and legally identical to the harm allegedly suffered by every other Class Member.

In considering the adequacy of class counsel, courts look to whether the attorneys "(1) possessed adequate experience; (2) vigorously prosecuted the action; and (3) acted at arm's length from the defendant." *In re Gen. Motors Corp.*, 55 F.3d at 801. The Third Circuit has

indicated that courts should consider the non-exhaustive list of factors in Rule 23(g) for appointing counsel in determining the adequacy of representation.  *See In re Nat'l Football League Players*, 821 F.3d at 429; *see also Sheinberg v. Sorensen*, 606 F.3d 130, 132 (3d Cir. 2010) ("Although questions concerning the adequacy of class counsel were traditionally analyzed under the aegis of the adequate representation requirement of Rule 23(a)(4) of the Federal Rules of Civil Procedure, those questions have, since 2003, been governed by Rule 23(g).").  Those factors include counsel's work in the instant class action, experience in handling class actions or other kinds of complex litigation, knowledge of the applicable laws, and resources available for representing the class. Fed. R. Civ. P. 23(g)(1)(A).  Additionally, the court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(1)(B).

Under each of the Rule 23(g)(1)(A) factors, Class Counsel—Daniel C. Levin, Esquire, from the law firm of Levin Sedran & Berman LLP, D. Aaron Rihn, Esquire, from Robert Peirce & Associates, P.C., Jason Medure, Esquire, from Medure Bonner Bellissimo, LLC, and Larry Weisberg, Esquire, Derrek W. Cummings, Esquire, Steve T. Mahan, Esquire, and Stephen P. Gunther, Esquire, from McCarthy Weisberg Cummings, P.C.—are qualified to "fairly and adequately represent the interests of the class."  All seven attorneys are experienced in handling class actions.  (*See* Doc. No. 56-1 at 17, 24.)  As noted in Plaintiff's Motion for Attorneys' Fees, Levin has served as class counsel in many cases, and Levin Sedran is a preeminent and experienced class action law firm.  (*See* Doc. No. 57-9 at 16–17; Doc. No. 57-1 at 27–29 (noting that U.S. New and World News and World Report for Best Law Firms distinguished the firm as a Tier I law firm for class action and detailing some of the firm's "record-breaking recoveries over the past four decades").  *See generally* Doc. No. 57-9 (the firm's resume).)  Rihn has been

litigating complex consumer and medical class actions for over twenty years and has been lead or co-lead counsel on numerous successful certified class and collective actions in the Western District of Pennsylvania.  (Doc. No. 57-1 at 29–30; Doc. No. 57-10 (Rihn's's resume).).  Weisberg and Cummings have 45-years of combined legal experience and have "handl[ed] complex litigation resulting in settlements totaling tens of millions of dollars."  (Doc. No. 57-1 at 30; Doc. No. 57-11 at 2.)  The Weisberg Cummings firm has prosecuted class and collective action claims successfully through trial and appeal.  (Doc. No. 57-1 at 30; Doc. No. 57-11 at 3–4.)

The attorneys have "review[ed] hundreds of documents," "calculate[ed] [Erby's] and Class Members' damages using records obtained from Defendants," and engaged in arm's length negotiations.[12]  (Doc. No. 56-1 at 24–25.)

In sum, the Rule 23(a) prerequisites for class certification are satisfied.

### 2.    Rule 23(b)(3) Requirements

Because the Settlement Class satisfies the requirements set forth in Rule 23(a), the Court must now consider whether the class satisfies the conditions set forth in Rule 23(b)(3).[13]

Under Rule 23(b)(3), the Court must find that "the questions of law or fact common to

---

[12] The Court notes that the Joint Motion has a number of factual inaccuracies.  For example, the Joint Motion states that the "the parties were assisted by a skilled and neutral mediator" and even cites a case for the proposition that there is a presumption of fairness when the parties engage in arm's length negotiations, assisted by a retired magistrate judge who was retained as a private mediator.  (*See* Doc. No. 56-1 at 24.)  But during the Final Approval Hearing, Class Counsel stated that counsel were *not* assisted by a mediator.  (*See* Sept. 15, 2022 Rough Hr'g Tr. at 15:25–16:4.)  Similarly, the Joint Motion states that Class Counsel "interview[ed] many fact witnesses" (Doc. No. 56-1 at 25), but, at the hearing, Class Counsel said they did not interview any fact witnesses (*see* Sept. 15, 2022 Rough Hr'g Tr. at 14:21–23.)  At the direction of the Court, these inaccuracies were ultimately remedied in amended disclosures and the Court finds that Class Counsel has capably represented the Class.

[13] Plaintiffs can seek certification under one of three avenues set forth in Rule 23(b).  Here, Plaintiffs seek certification pursuant to Rule 23(b)(3).

class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  The key issue under the predominance factor is "whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Windsor*, 521 U.S. at 623.  The Third Circuit has counseled that courts should be "more inclined to find the predominance test met in the settlement context."[14]  *In re Natl' Football League Players*, 821 F.3d at 434 (quoting *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 304 n.29 (3d Cir. 2011) (en banc)).

The predominance requirement is satisfied in this case.  The claims of all members of the putative class rely on common questions of fact—the Class Members' claims all turn on whether they suffered a total loss and were not reimbursed by Allstate for full sales tax.  Similarly, each Class Member's claim raises an identical question of law:  whether Allstate's practice of not reimbursing sales tax on total loss leased vehicles violated Pennsylvania law.  (*See* Doc. No. 56-1 at 19–20.)  Ultimately, these common questions of law and fact predominate over individual factual questions, such as the amount of sales tax owed to each person.  *Cf. Stechert v. Travelers Home & Marine Ins. Co..*, Civil Action No. 17-0784, 2022 WL 2304306, at *6 (E.D. Pa. June 27, 2022) ("The claims of all members of the putative class rely on common questions of fact— the Class Members' claims all turn on whether they held ETE coverage, used that ETE coverage to pay for a rental vehicle after the insured vehicle was deemed a total loss, and were paid one to thirty days of rental vehicle reimbursement from Travelers.  Likewise, each Class Member's claim raises an identical question of law: whether Travelers' practices regarding the early

---

[14] To be clear, the fact that all members of the proposed class have an interest in the settlement itself does not help establish predominance.  *See Windsor*, 521 U.S. at 622–23.  Nonetheless, the fact that Allstate has agreed to settle not just with Erby, but with thousands of similarly situated individuals, is a strong signal of the predominance of common factual and legal questions among the Class Members' claims.

termination of ETE coverage breached the governing insurance policies and violated Pennsylvania law. Taken together, these common questions of law and fact predominate over individual factual questions, such as how many days each Class Member was not paid a rental reimbursement.").

The last requirement for certifying a class is that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  When evaluating this requirement, courts consider "the class members' interests in individually controlling litigation, the extent and nature of any litigation, the desirability or undesirability of concentrating the litigation, and the likely difficulties in managing a class action."  *In re Nat'l Football League Players*, 821 F.3d at 435 (citing Rule 23(b)(3)(A)–(D)). Superiority can be satisfied where the settlement prevents "duplicative lawsuits and enables fast processing of a multitude of claims."  *Id.* (quoting *In re Nat'l Football League Players' Concussion Inj. Litig.*, 307 F.R.D. 351, 382 (E.D. Pa. 2015)); *see also Sullivan*, 667 F.3d at 312.

In this case, an analysis of superiority weighs in favor of certifying the class.  Only four Class Members opted out of the Settlement, and no one objected to it.  (*See* Doc. No. 56-3 at ¶¶ 22–23.)  This relatively small number of opt outs illustrates the superiority of adjudicating this controversy through a class action.  *See In re Nat'l Football League Players*, 307 F.R.D. at 382 (finding superiority in part because relatively few class members had opted out of the class); *see also Stechert*, 2022 WL 2304306, at *7 (holding that superiority was satisfied because only 17 class members opted out of the settlement).  Further, the Settlement promotes judicial efficiency, as it "removes the overwhelming and redundant costs of individual trials."  (Doc. No. 56-1 at 21.)

It is unclear why Class Counsel chose to bring this action in the Eastern District of

Pennsylvania, as opposed to the Middle District of Pennsylvania (where Erby resides). (*See* Doc. No. 47-1 (defining the settlement class as "all persons who submitted a private-passenger auto physical damage claim for a leased vehicle under an Allstate Pennsylvania policy"); Doc. No. 46 at ¶ 1 (pleading that Erby resides in Mechanicsburg, Pennsylvania).)  Nothing in the record suggests that the parties have ascertained the exact number of Class Members located in the Eastern District of Pennsylvania (as opposed to the Middle or Western Districts).  Nonetheless, given that the Class Members reside *somewhere* within Pennsylvania, the Court finds that it is desirable to concentrate litigation in this Court.  *Cf. Zeno v. Ford Motor Co.*, 238 F.R.D. 173, 197–98 (W.D. Pa. 2006) (finding it desirable to concentrate litigation in the Western District of Pennsylvania where "the class includes purchasers only in the Commonwealth [of] Pennsylvania").

Accordingly, both of the requirements set forth in Rule 23(b)(3) are satisfied.

* * *

Because the requirements of Rules 23(a) and 23(b)(3) are satisfied, the Court will certify the Settlement Class.

### B.     *Notice to the Settlement Class Was Adequate*

Having finally certified the Settlement Class, the Court must now evaluate the adequacy of notice to the Class Members.  *Fein v. Ditech Fin., LLC*, No. 5:16-cv-00660, 2017 WL 4284116, at *6 (E.D. Pa. Sept. 27, 2017).  Rule 23(c)(2)(B) requires that the class receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  Due process also requires that "notice be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"

*In re Nat'l Football League Players*, 821 F.3d at 435 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

Notice may be delivered through United States mail, electronically, or other means and must "clearly and concisely state":

    (i)     the nature of the action;

    (ii)    the definition of the class certified;

    (iii)   the claims, issues, or defenses;

    (iv)   that a class member may enter an appearance through an attorney if the member so desires;

    (v)   that the court will exclude from the class any member who requests exclusion;

    (vi)   the time and manner for requesting exclusion; and

    (vii)  the binding effect of a class judgment on members under Rule 23(c)(3).

*Id.*

The Court finds that the parties' notice plan satisfied these requirements. The Email Notice clearly explained what the lawsuit was about, the definition of Settlement Class, and the terms of the Settlement; it also outlined how to make a claim and the deadline to do so, informed potential Class Members that they may opt out or object and the deadline by which to do so, and stated how to get additional information. (*See* Doc. No. 56-3, Ex. 1 at 12–13.) The Mail Notice contained similar information and also explained other options Settlement Class Members have, such as appearing or having counsel appear on their behalf at the Final Approval Hearing, and explained the binding nature of the Settlement. (*See id.*, Ex. 4 at 20–21.)

As for delivery of the notices, Epiq was provided with email addresses and mailing addresses of potential Class Members through the Claims and Policy Data. (*See generally* Doc.

No. 56-3; Doc. No. 47-1 at ¶ D (defining "Claims and Policy Data").)  On August 1, 2022, Epiq

sent the Email Notice to 24,539 email addresses.  (Doc. No. 56-3 at ¶ 7.)  Out of that transmittal,

only 2,568 Email Notices could not be delivered.  (*Id.* at ¶ 8.)  Accordingly, "89.5% of those

Settlement Class Members with an email address identified in the Claims and Policy Data" were

successfully transmitted the Email Notice.  (*Id.*)  Epiq also sent a second transmittal notice to all

available email addresses, and a third email to certain potential Class Members as well.  (*Id.* at ¶¶

9–10.)

Epiq also disseminated the Mail Notice to all potential Class Members with valid

addresses.  (*Id.* at ¶¶ 11, 14.)  Epiq cross-checked and/or processed the addresses through several

databases and the addresses were updated.  (*See id.* at ¶ 12.)  If Mail Notices were returned as

undeliverable, Epiq re-mailed the notices to the forwarding address if one was provided and if

one was not provided, it used a third party to perform skip-trace searches to find an updated

mailing address.  (*Id.* at ¶¶ 15–16.)

In total, as of August 30, 2022, "Epiq mailed and/or emailed notice to 26,746 unique

Settlement Class Members, with notice to 445 Settlement Class Members currently known to be

undeliverable by both mail and email, yielding an overall 98.3% deliverable rate to the

Settlement Class as a whole when considering all forms of notice attempted."  (*Id.* at ¶ 17.)

Given the high deliverable rate, the Court finds that the notice satisfied the requirements of Rule

23(c)(2)(B) and comports with due process.  *See Stechert*, 2022 WL 2304306, at *8 (finding the

notice requirement comported with due process where there was an 89.84% delivery rate); *Wood

v. Saroj & Manju Invs. Phila. LLC*, CIVIL ACTION NO. 19-2820-KSM, 2021 WL 1945809, at

*5 (E.D. Pa. May 14, 2021) (finding a 92.8% deliverable rate "reasonably calculated to provide

notice to all potential class members").

### C.        *The Settlement Is Fair, Reasonable, and Adequate*

Under Rule 23, a court may approve a settlement "only on a finding that it is fair,

reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  District courts have discretion to decide

whether to grant final approval to a proposed settlement.  *Girsh v. Jepson*, 521 F.2d 153, 156 (3d

Cir. 1975).  Settlements are entitled to "an initial presumption of fairness" if "the court finds that:

(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the

proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of

the class objected."  *In re Gen. Motors Corp.*, 55 F.3d at 785.  However, where, as here, the

parties seek settlement approval and final class certification simultaneously, the Court must

examine the fairness of the settlement agreement "even more scrupulous[ly] than usual."  *In re*

*Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 534 (3d Cir. 2004).

The Settlement is entitled to an initial presumption of fairness.  The parties negotiated the

settlement at arm's length.  (Doc. No. 56-1 at 24.)  Prior to reaching settlement, experienced

Class Counsel "thoroughly investigat[ed]" Erby and the Class Members' claims, "review[ed]

hundreds of documents," and calculate[ed] [their] damages using records obtained from

[Allstate]."  (*Id.* at 25.)  And, critically, *no one* in the class objected to the Settlement.  (*Id.*)

Although the Settlement is entitled to an initial presumption of fairness, we must consider

the following *Girsh* factors to confirm that the settlement is fair, reasonable and adequate:

> (1) the complexity, expense and likely duration of the litigation;
> (2) the reaction of the class to the settlement; (3) the stage of the
> proceedings and the amount of discovery completed; (4) the risks of
> establishing liability; (5) the risk of establishing damages; (6) the
> risk of maintaining the class action through the trial; (7) the ability
> of the defendants to withstand a greater judgment; (8) the range of
> reasonableness of the settlement fund in light of the best possible
> recovery; and (9) the range of reasonableness of the settlement fund
> to a possible recovery in light of all the attendant risks of litigation.

*See Girsh*, 521 F.2d at 157.  The Court considers each of these factors in turn.

*Complexity, Expense, and Likely Duration of the Litigation.*  This litigation does not strike the Court as particularly complex nor as one that has gone on for a particularly long duration.  Thus, this first factor is neutral.

*Reaction of the Class to the Settlement.*  The Settlement Class reacted very favorably to the Settlement.  As of August 30, 2022, 7,712 Class Members have submitted Claim Forms, representing a claims rate of between 28.8% and 31.4% (*id.* at 29) and as of October 6, 2022, Epiq had received 9,628 Claim Forms (Oct. 7, 2022 Ltr).  Given that the claims period does not end until October 26, 2022, the claims rate will almost certainly rise.  (*Id.* at 29.)  Only four Class Members opted out of the Settlement, and, perhaps most importantly, there are **_no objections_**.  (Doc. No. 56-3.)  This factor weighs heavily in favor of approval.

*Stage of Proceedings and Amount of Discovery Completed.*  The parties litigated this case for over three years before reaching the Settlement.  The Court recognizes that no depositions were taken and no fact witnesses were interviewed.  (*See* Sept. 15, 2022 Rough Hr'g Tr. at 14:18–23.)  Nonetheless, given the stage of proceedings, the Court finds this factor weighs in favor of approving the Settlement.  (*See id.*)

*Risks of Establishing Liability and Damages.*  Defendants contest liability (Doc. No. 47-1 at ¶¶ 58–60), and "maintain[] that its defenses to the merits of this case and to class certifications are meritorious."  (*Id.* at ¶ 59.)  Defendants also believe that they have "a reasonable chance of success in any appeal as to the merits of this case and as to the certification of the Class."  (*Id.*)  Given these assertions, there appear to be some risks and these factors weigh in favor of approving the Settlement.

*Risks of Maintaining a Class Action Through Trial.*  As discussed above, there are also risks with maintaining a class action through trial.  Were the Settlement rejected, Defendants

assert that it would contest the propriety of certification.  (*See id.* at ¶ 59 ("Allstate maintains that its defenses as to the merits of this case and to class certification are meritorious.").)  Even if the Court were to have certified a class, Defendants would have likely appealed, which would have further extended the litigation.  (*Id.* ("Allstate believes that it stands a reasonable chance of success in any appeal as to the merits of this case and as to the certification of the Class.").)  Given the risks of achieving certification and maintaining a class throughout trial (and given the likelihood that the fight over class certification would further delay the resolution of this case), this factor also weighs in favor of approval.

*Ability of Defendants to Withstand a Greater Judgment.*  "This factor assesses the ability of defendants to withstand a greater judgment, and is 'most clearly relevant where a settlement in a given case is less than would ordinarily be awarded but the defendant's financial circumstances do not permit a greater settlement.'"  *In re Nat'l Football League Players*, 307 F.R.D. at 394 (quoting *Reibstein v. Rite Aid Corp.*, 761 F. Supp. 2d 241, 254 (E.D. Pa. 2011)).  "However, when there is no 'reason to believe that [d]efendants face any financial instability[,] . . . this factor is largely irrelevant.'"  *Id.*  There is no reason to believe Allstate is financially unstable, but the fact that it could withstand a larger judgment weighs neither in favor of nor against approving the Settlement.

*The Reasonableness of the Settlement in Light of the Best Possible Recovery and All the Attendant Risks of Litigation.*  The Settlement is reasonable in light of the best possible recovery and attendant risks of litigation.  Allstate will pay each Settlement Class Member 100% of their actual loss.  (*See* Doc. No. 56-1 at 27 ("In this case, the Settlement provides the class with complete relief.  Any class member who submits a claim will receive 100% of their total loss.").)  On top of the funds to the Settlement Class, Allstate will pay the costs of settlement

administration and will pay costs and fees to Class Counsel and Class Representative service award, so long as they do not exceed the delineated amounts ($730,000 in attorneys' fees, $25,000 in costs, and $6,500 in a Service Award).  (Doc. No. 47-1 at ¶¶ 42–45, 65.)  In addition to monetary relief, the Settlement provides equitable relief—Allstate now pays Full Sales Tax in Total Loss Claim Payments relating to leased vehicles under Pennsylvania private passenger auto insurance policies.  (*Id.* at ¶ 66.)

Given the value of the Settlement and the undeniable risks with continuing the litigation, discussed *supra*, the final two factors both weigh in favor of approval.

* * *

The Settlement is fair, reasonable, and adequate.  It is entitled to a presumption of fairness, and that presumption is supported by the *Girsh* factors, eight of which weigh in favor of approval and one of which is neutral.  Accordingly, the Court approves the Settlement.

## III.   ATTORNEYS' FEES, COSTS, AND SERVICE AWARD

Class Counsel requests the Court award attorneys' fees and costs and grant the named Plaintiff Erby a service award.  (Doc. No. 57.)  Where, as here, "counsel agree to the amount of an attorney fee award in a class action,[15] it is tempting to sign off without conducting a thorough and comprehensive review of the request.  Yet, the dynamics of the settlement process demand the Court resists the temptation," and unfortunately, during the Court's review of Class Counsel's motion, the Court found a number of discrepancies.[16]  *Brown v. Rita's Water Ice*

---

[15] As noted *supra*, the Settlement Agreement provides that Allstate will pay for attorneys' fees of up to $730,000 and costs of up to $25,000.  (Doc. No. 47-1 at ¶¶ 42–45, 65.)  And Class Counsel requests fees of $730,000 here.

[16] The Court recognizes that *Brown* involved a different set of facts—mainly, the attorneys' fees came from the same fund as the class members' recovery so reducing the attorneys' fees in turn increased the size of the net fund available to class members, whereas here the attorneys' fees have no bearing on the distribution to the Settlement Class.  Nonetheless, the Court agrees with the Honorable Timothy J.

*Franchise Co. LLC*, 242 F. Supp. 3d 356, 357 (E.D. Pa. 2017).

    **A.**     *Attorneys' Fees*

    "In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Attorneys' fees may be calculated using either the percentage-of-recovery method or the lodestar method. *See Halley v. Honeywell Int'l, Inc.*, 861 F.3d 481, 496 (3d Cir. 2017). Where, as here, the settlement funds come from a common fund, courts generally evaluate the attorneys' fees' reasonableness using the percentage-of-recovery method, with a lodestar crosscheck.[17] *Id.*

    **1.**     **Percentage-of-Recovery Method**

    "The percentage-of-recovery approach compares the amount of attorneys' fees sought to the total size of the fund." *Id.* Courts consider the following factors in assessing the reasonableness of a request for attorneys' fees:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or the fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by counsel; and (7) awards in similar cases.

*Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000). Courts also generally consider three additional factors:

> (8) [T]he value of benefits attributable to the efforts of class counsel

---

Savage that the temptation to rubber stamp motions for agreed-upon attorneys' fees, without taking a hard look, must be resisted.

    [17] Although the attorneys' fees are being paid separate and apart from the distribution to the Settlement Class, the monies for both originate from Allstate, so this is a "constructive common fund." *See Dewey v. Volkswagen Aktiengesellschaft*, 558 F. App'x 191, 197 (3d Cir. 2014) ("However, where the reality is that the fund and the fee are paid from the same source—in this case, Volkswagen—the arrangement is, for practical purposes, a constructive common fund, and courts may still apply the percent-of-fund analysis in calculating attorney's fees." (cleaned up)).

relative to the efforts of other groups, such as government agencies conducting investigations, (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained, and (10) any innovative terms of settlement.

*In re Diet Drug*, 582 F.3d 524, 541 (3d Cir. 2009) (citing *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 338 (3d Cir. 1998)).

Class Counsel requests $730,000 in attorneys' fees, representing approximately 15.5% to 17.6% of the value of the Settlement.[18]  (Doc. No. 57-1 at 24.)  The Court reviews each of the *Gunter/Prudential* factors below.

*Size of the Fund Created and Number of Beneficiaries.*  The Settlement provides claimants with full relief, meaning that any class member who submits a claim will receive 100% reimbursement of the sales tax owed to them.  (*Id.* at 21.)  Class Counsel's expert Dr. Leonard A. Cupingood, Ph.D., has estimated that the total amount of sales tax that Allstate failed to reimburse during the Class Period ranges from $3,427,380 to $3,981,780.  (*Id.* at 20–21.)  As of October 6, 2022, approximately 9,628 claim forms had been received.  (Oct. 7, 2022 Ltr.)  Based on a random sampling of the claim forms received thus far, an estimated $1,299,387.18 will be paid out on the existing claims.  (*Id.*)  However, the parties anticipate more claim forms to be received before the claim period ends on October 26.  (*Id.*)  The parties also note that if it is assumed based on the random sample that 24% of the 26,746 potential class members provided with notice are being underpaid, the total value of the settlement is $3,339,700.36.  (*Id.*)

This is a sizeable fund, and its size is augmented by the fact that Allstate has agreed to change its conduct and no longer engages in the conduct in dispute.  *See Mirakay v. Dakota*

---

[18] Class Counsel's expert has estimated that the total value of unreimbursed sales tax is $3,427,380 to $3,981,780.  (Doc. No. 57-1 at 20–21.)  Together with the requested attorneys' fees of $730,000, the total value obtained is between $4,157,380 and $4,711,780.  (*Id.* at 24.)

*Growers Pasta Co., Inc.*, Civil Action No. 13–cv–4429 (JAP), 2014 WL 5358987, at *13 (D.N.J. Oct. 20, 2014) (finding this factor weighed in favor of reasonableness because "an even broader spectrum of persons, whether class members or not, will benefit from the injunctive provisions of the settlement"). This factor supports the award of the requested fees.

*Presence or Absence of Objections.* The Email and Mail Notice alerted the Settlement Class that Class Counsel would request attorneys' fees and costs not to exceed $755,000. (Doc. No. 56-3, Ex. 1 at 12, Ex. 4 at 21.) No one has objected to any part of the Settlement, including the attorneys' fees and costs provision. The lack of objection from the Settlement Class weighs in favor of approval.

*Skill and Efficiency of Attorneys Involved.* As discussed above in Section II.A.1, Class Counsel is skilled and experienced in class actions. Allstate was likewise represented by high-quality counsel from national law firm Cozen O'Connor. (*See* Sept. 15, 2022 Rough Hr'g Tr. at 17:10–17 (Class Counsel noting that Cozen O'Connor is "an accomplished firm" and that it "vigorously defended this case"); 17:20–18:2 (Allstate's counsel, Wendy Enerson, explaining that she has over 22 years' worth of experience representing insurance companies, and her partner, Peter Valeta, has over 35 years' worth of experience representing insurance companies, both primarily in the class action context, and stating that they have "defended numerous companies who have been sued arising out of claim handling practices, underwriting practices, bad faith, all in the class action context").)

Although the attorneys representing both parties are well-credentialed and have years of experience litigating similar matters, the Court cannot find that this factor weighs in favor of finding the requested fees reasonable given the record before us. Namely, the Court strongly questions the efficiency and attention to detail of Class Counsel given the factual inaccuracies in

the Joint Motion for Final Approval (*see supra* n.10) and the number of inaccurate statements[19] that Class Counsel has made to this Court in the Joint Motion and in the original Declarations from Levin, Rihn, and Cummings (*compare* Doc. Nos. 57-6, 57-7, 58-8 *with* Doc. Nos. 60, 61, 62).[20]  The fact that the Court had to order Class Counsel to file amended declarations underscores Class Counsel's inefficiency.

   *Complexity and Duration of Litigation.*  Class Counsel has been litigating this case for over three years.  (Doc. No. 57-1 at 31.)  They have researched and investigated claims against Allstate and briefed opposition to a motion to dismiss and the subsequent motion for reconsideration.  (*Id.* at 16.)  However, the Court notes that, at the final approval hearing, the parties represented that the law on which Allstate previously relied on regarding its position related to the sales tax on total loss leased vehicles changed.  (Sept. 15, 2022 Rough Hr'g Tr. at 18:8–9.)  And Allstate has agreed to pay 100% of all class members' claims.  Accordingly, the Court cannot find that this litigation was particularly complex or of a notable duration.  The Court finds that this factor is neutral.

   *Risk of Nonpayment.*  Class Counsel undertook this case on a contingent basis.  (Doc. No. 57-1 at 31.)  "Courts routinely recognize the risk created by undertaking an action on a

---

[19] It appears to the Court that the inaccurate statements were inadvertent and the function of a less than careful review of the final documents by Class Counsel, as opposed to intentional misrepresentations.

[20] The Court ordered Class Counsel to submit new declarations because the original declarations stated that Class Counsel "interviewed hundreds of absent class members," which the Court found inaccurate and misleading.  (*See* Doc. No. 59 ("[G]iven Plaintiff's counsel's representation during the Final Approval Hearing that it had not conducted any fact witness interviews; the Court's review of Plaintiff's counsel's declarations (Doc. Nos. 57-6, 57-7, 57-8) to Plaintiff's motion for attorneys' fees (Doc. No. 57), which each state that counsel 'interviewed hundreds of absent class members'; and an email exchange with Plaintiff's counsel in which counsel represented that 'Counsel for Plaintiff [did] not have any fact statements from interviews' but 'fielded calls from class members since the filing of the complaint,' the Court finds that the declarations are misleading as they imply witnesses were actually interviewed.").)

contingency fee basis militates in favor of approval." *Whiteley v. Zynerba Pharms., Inc.*, CIVIL ACTION NO. 19-4959, 2021 WL 4206696, at *12 (E.D. Pa. Sept. 16, 2021) (quoting *In re Schering-Plough Corp. Enhance ERISA Litig.*, Civil Action No. 08–1432 (DMC)(JAD), 2012 WL 1964451, at *7 (D.N.J. May 31, 2012)); *see also Stechert*, 2022 WL 2304306, at *13 (finding that this factor weighed in favor of approving the fee request where class counsel took the case on a contingency basis). Class Counsel have worked on this litigation for over three years but have not yet been paid a cent to date. They took the risk they would never be able to recoup fees for any of their efforts, so this factor weighs in favor of awarding the fees requested.

*Time Devoted by Class Counsel.* Altogether, Class Counsel have devoted over 990 hours to this litigation. (Doc. No. 57-1 at 16.) The Court finds this factor weighs in favor of approving the fee request.

*Awards in Similar Cases.* Courts using the percentage-of-recovery method to calculate attorneys' fees generally approve fees ranging "from roughly 20-45%." *Marby v. Hildebrandt*, Civil Action No. 14-5525, 2015 WL 5025810, at *4 (E.D. Pa. Aug. 24, 2015) (collecting cases). The fees Class Counsel have requested represent roughly 15.5% to 17.6% of the distribution to the Settlement Class, and an even smaller portion of the Settlement when the injunctive relief is factored in. Courts regularly approve fee awards where the percentage is nearly double that. *See Fein v. Ditech Fin., LLC*, No. 5:16-cv-00660, 2017 WL 4284116, at *12 (E.D. Pa. Sept. 27, 2017) (finding a fee award that represented 33% of the settlement reasonable) (collecting cases*); see also Stechert*, 2022 WL 2304306, at *13 (finding this factor weighed in favor of approving the fee request where the fees class counsel requested represented roughly 33% of the distribution to the settlement class). This factor weighs in favor of approving the fee request.

*Value of Benefits Attributable to Class Counsel's Efforts.* No government agencies or

other institutions investigated Allstate for its practice of failing to reimburse sales tax on total loss leased vehicles, and there is no evidence that anyone other than Class Counsel initiated this action, so this factor weighs in favor of awarding the fees requested. *See Pinnell v. Teva Pharms. USA, Inc.*, CIVIL ACTION NO. 19-5738, 2021 WL 5609864, at *1 n.2 (E.D. Pa. June 11, 2021) (finding that this factor weighed in favor of awarding the requested fees where there was no evidence that anyone other than class counsel initiated the action).

   *Percentage that Would Have Been Awarded in Private Contingency Arrangement.* Class Counsel requests fees that represent approximately 15.5% to 17.6% of the distribution to the class. (Doc. No. 64 at 29.) This is far below the standard contingency award. *See Boone v. City of Philadelphia*, 668 F. Supp. 2d 693, 714 (E.D. Pa. 2009) (explaining that the median attorneys' fee award in class actions is one-third, or 33%).

   *Innovative Terms of Settlement.* The Settlement is two pronged: it includes 100% of recovery available to Class Members who file a timely and valid Claim Form, and Allstate agreed to change its conduct going forward. (*See* Doc. No. 47-1.) Although these terms are effective for the facts of this case, neither is particularly innovative. Despite the standard terms, "this factor neither weighs in favor nor detracts from a decision to award attorneys' fees." *In re Processed Egg Products Antitrust Litig.*, No. 08–md–2002, 2012 WL 5467530, at *6 (E.D. Pa. Nov. 9, 2012).

* * *

   Considering these factors together, and placing particular weight on the issues related to Class Counsel's inefficiencies and attention to detail, which was wanting, , the Court finds that the requested attorneys' fees should be slightly reduced. Accordingly, the Court awards $715,000 in attorneys' fees.

## 2.      Lodestar Crosscheck

The Third Circuit has recommended that courts crosscheck the reasonableness of the

attorneys' fees request using the lodestar method.  *Gunter*, 223 F.3d at 195 n.1.  "The purpose of

the cross-check is to ensure that the percentage approach does not result in an 'extraordinary'

lodestar multiple or windfall."  *Whiteley*, 2021 WL 4206696, at *13 (quoting *In re Cendant*

*Corp. Litig.*, 264 F.3d 201, 285 (3d Cir. 2001)).  "The lodestar method 'multiplies the number of

hours counsel worked on the case by a reasonable hourly billing rate for such services,' and

compares that amount to the attorneys' fees sought."  *Halley*, 861 F.3d at 496 (quoting *Sullivan*,

667 F.3d at 330).

As detailed in the chart below, Class Counsel have expended 990 hours on this case,

which correlates to a lodestar of $787,318.75.  (Doc. No. 60 at ¶ 5; Doc. No. 61 at ¶ 4; Doc. No.

62 at ¶ 5.)

| Attorney | Hours Worked | Hourly Rate | Individual Lodestar |
|---|---|---|---|
| Daniel C. Levin | 428.25 | $975 | $417,543.75 |
| Charles E. Schaffer | 8.25 | $975 | $8,043.75 |
| David Magagna | 0.25 | $550 | $137.50 |
| Nicholas Elia | 22.50 | $500 | $11,250 |
| D. Aaron Rihn | 214.00 | $800 | $171,200.00 |
| Sara J. Watkins | 168.25 | $500 | $84,125.00 |
| Danielle Dalay | 9.00 | $250 | $2,250.00 |
| Michele Rossi | 51.50 | $250 | $12,875.00 |
| Derrek W. Cummings | 39.50 | $975 | $38,512.50 |
| Larry A. Weisberg | 37.25 | $975 | $36,318.75 |
| Steve T. Mahan | 11.25 | $450 | $5,062.50 |
| *Total* | 990 | -- | $787,318.75 |

(*Id.*)

The Court finds both the hourly rate and the number of hours worked reasonable.  The

reasonableness of hourly rates is generally assessed by reference to "prevailing market rates in

the community," and based on the skill and experience of the attorneys and staff who worked on

the matter.  *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001).  Class Counsel have

years of experience and are highly skilled in complex litigations such as this.  And their hourly

rates fall well within the range of rates charged by other attorneys practicing complex litigation

in Philadelphia.  *See Whiteley*, 2021 WL 4206696, at *14 (finding that hourly rates ranging from

$110 to $1,100 "well within the range of what is reasonable and appropriate in this market"); *see*

*also Stechert*, 2022 WL 2304306, at *14 (finding hourly rates ranging from $450 to $750 to be

reasonable in insurance class action).

"The reasonableness of the number of hours worked requires counsel to not spend

excessive time on a case and to not use top legal talent for routine work that associates or

paralegals could perform."  *In re Processed Egg Prods.*, 2012 WL 5467530, at *6.  The number

of hours worked was reasonable, especially in light of the motion to dismiss and motion to

reconsider briefing, review of claims data, and discovery.  *Cf. Stechert*, 2022 WL 2304306, at

*14–15 (finding 1,833.72 hours expended to be reasonable in complex insurance class action that

involved multiple rounds of discovery and a Third Circuit appeal); *Cunningham v. Wawa, Inc.*,

Civ. No. 18-3355, 2021 WL 1626482, at *8 (E.D. Pa. Apr. 21, 2021) (finding it reasonable that

class counsel expended 2,203.15 hours on a complex litigation).

The lodestar is $787,318.75, which results in a lodestar multiplier of 0.93 ($730,000 ÷

$787,318.75).  This falls well within the range of lodestar multipliers courts within the Third

Circuit have accepted.  *See Prudential*, 148 F.3d at 341 ("Multiples ranging from one to four are

frequently awarded in common fund cases when the lodestar method is applied . . . ." (internal

citation omitted)); *Stechert*, 2022 WL 2304306, at *15 (accepting a lodestar multiplier of 1.04);

*see also Dickerson v. York Int'l Corp.*, Civil Action No. 1:15-CV-1105, 2017 WL 3601948, at

*11 (M.D. Pa. Aug. 22, 2017) ("A negative multiplier reflects that counsel is requesting only a

fraction of the billed fee; negative multipliers thus 'favor approval.'" (quoting *Altnor v. Preferred Freezer Servs.*, 197 F. Supp. 3d 746, 767 (E.D. Pa. 2016))).  Thus, the lodestar crosscheck confirms the reasonableness Class Counsel's fee request.

*          *          *

In sum, the requested attorneys' fees are reasonable under both the percentage-of-recovery method and the lodestar crosscheck; however, for the reasons discussed above, the Court finds that a slight reduction is warranted.  Accordingly, the Court awards Class Counsel $715,000 in fees.

### B.      Expenses

Class Counsel have also requested reimbursement for $23,083.89 in out-of-pocket litigation expenses.  (Doc. No. 57-1 at 33.)  These expenses include filing fees, service of process fees, travel fees, professional services fees, Westlaw research, and administrative expenses such as photocopies and long distance/fax charges.  (Doc. Nos. 61 at ¶ 4, 60 at ¶ 5.)  These expenses are reasonable, and no Class Member objected to the reimbursement, so we will grant Class Counsel's request for reimbursement.  *See Cunningham*, 2021 WL 1626482, at *8; *see also Stechert*, 2022 WL 2304306, at *15 (approving fee request for $22,004.82 in litigation expenses, which included filing fees, service of process fees, expert and professional services fees, deposition fees, PACER research, travel fees, and administrative expenses such as printing, photocopies, and similar items).

### C.      Class Representative Service Awards

Class Counsel have also asked the Court to grant Erby a $6,500 service award.  (Doc. No. 57-1 at 34.)  Service awards are regularly granted to "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation

33

and [ ] reward the public service of contributing to the enforcement of mandatory laws."
*Sullivan*, 667 F.3d at 333 n.65.

The Court finds the proposed service award slightly high given the account of Erby's actual involvement in this class action lawsuit. Although the Court appreciates that it was difficult for Erby to relive the car accident through his discussions with his attorneys, that is the sum total of his involvement here. (*See* Sept. 15, 2022 Rough Hr'g Tr. at 24:15– ("[H]is involvement was to sit with us, to go through that. But then to have to bring all that back up again, to bring in all the paperwork, go through it, to make sure that the in fact his claim would qualify. He spent time in doing that.").) He did not sit for a deposition. (*Id.* at 26:6–9.) He did not have to help review discovery and participate in a mediation. At bottom, there is no indication that he was particularly involved in this litigation, other than at its initiation. The Court finds that a reward of $4,500 is more appropriate, given Erby's minimal involvement in this case.

The Court notes that this service award is being paid separate and apart from the Class Distribution and will not reduce the Class Members' recovery. If a service award is not granted, or if it was reduced, that money would not be redistributed to the Settlement Class.

Accordingly, the Court grants the request to award Erby $4,500.

## IV.    CONCLUSION

For these reasons, the Court approves the Settlement. The Court also awards $738,083.89 in attorneys' fees and costs to Class Counsel, and $4,500 to Erby as a service award. An appropriate Order follows.